UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | **UNDER SEAL** |
| v. | No. No. 3:02CR00378 (AHN) |
| CASPER SABATINO, | |
| Defendant. | Date: January 26, 2007 |

### GOVERNMENT'S MOTION FOR DEPARTURE PURSUANT TO U.S.S.G. § 5K1.1 BASED ON SABATINO'S SUBSTANTIAL ASSISTANCE

The Government respectfully submits this motion for a sentence significantly lower than what the Court determines to be the applicable advisory guideline range on the ground that defendant Casper Sabatino ("Sabatino") provided extraordinarily substantial assistance in the discovery, investigation and prosecutions stemming from the fraud that occurred at Cendant Corporation ("Cendant") and one of its predecessor companies, CUC International, Inc. ("CUC") during the 1990s. The sentence in this matter is scheduled for January 29, 2007 at 2:00pm.

### Background

As Your Honor is aware, Sabatino was one of the "whistle blowers" who first brought light to the fraud at CUC. On April 9, 1998, prior to consulting with an attorney or seeking any assurances regarding the potential ramifications,

Sabatino and two other former CUC employees drove to the headquarters of the HFS side of Cendant in Parsipanny, New Jersey and exposed their involvement in the fraud perpetrated by the CUC side of Cendant. Immediately after that disclosure, Sabatino voluntarily provided Cendant a sworn Affidavit attesting to his involvement in the fraud. As a result, only six days after his initial disclosure of the fraud, on April 15, 1998, Cendant announced accounting irregularities in the former CUC business units of Cendant.

On May 11, 1998, Sabatino voluntarily met with the Government for the first time. This meeting was the first by a coconspirator, or any witness, with the Government in this matter. Although the Government was not in a position to delineate the consequences of Sabatino's cooperation at that time, Sabatino began to explain the fraud at CUC/Cendant to the Government without any assurances.

As a result, on June 18, 1999, Sabatino executed an agreement with the Government to plead guilty to his participation in the fraud that occurred during his tenure at CUC and Cendant. Although he had already been assisting the Government for more than a year, in that same agreement Sabatino agreed to cooperate fully and truthfully with the Government. On June 14, 2000, Sabatino pled guilty to a one count Information that charged him with Aiding and Abetting

Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 2.  At his plea allocution, as he had before, Sabatino candidly acknowledged his role in the conspiracy to fraudulently inflate the books and records of CUC and Cendant.  The facts of the offense conduct, as well as all guidelines calculations, are well summarized in the Presentence Report and all addendum, thereto.  The Government does not repeat them here.

## DEPARTURE FOR SUBSTANTIAL ASSISTANCE

As detailed below, Sabatino's cooperation was instrumental in securing the convictions of the COO E. Kirk Shelton ("Shelton") and CEO Walter A. Forbes ("Forbes"), as well as the guilty pleas and subsequent cooperation of Anne Pember ("Pember") and CFO Cosmo Corigliano ("Corigliano"), for their involvement in the fraud at CUC and Cendant.

U.S.S.G. §5K1.1 provides in pertinent part that:

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of anothim person who has committed an offense, the court may depart from the guidelines.

Id.

The decision whether to make a motion for downward departure rests with the Government.  See U.S.S.G. §5K1.1; Wade v. United States, 504 U.S. 181

(1992); see also Melendez v. United States, 518 U.S. 120 (1996); United States v. Gomez, 103 F.3d 249, 255 (2d Cir. 1997); United States v. Agu, 949 F.2d 63 (2d Cir. 1991); United States v. Khan, 920 F.2d 1100 (2d Cir. 1990); United States v. Rexach, 896 F.2d 710, 714 (2d Cir. 1990); United States v. Huerta, 887 F.2d 89, 93 (2d Cir. 1989). The Court in Huerta observed that the question of "substantial assistance" is "self evidently a question that the prosecution is uniquely fit to resolve." Huerta, 878 F.2d at 92. Moreover, Application Note 3 to the Commentary to U.S.S.G. §5K1.1 provides that "[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance . . . ." Id.; see also Gomez, 103 F.3d at 255; Rexach, 896 F.2d at 714.

U.S.S.G. § 5K1.1 instructs that in determining whethim a sentencing reduction is appropriate the court should consider, *inter alia*, the following non-exclusive factors:

A.  The court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

B.  the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

C.  the nature and extent of the defendant's assistance;

    D.    any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

    E.    the timeliness of the defendant's assistance.

## **DISCUSSION**

**A.    THE GOVERNMENT'S EVALUATION OF THE ASSISTANCE RENDERED**

In the view of the Government, Sabatino has completely, consistently, and very effectively honored his obligations under the plea agreement. In addition to being a "whistle blower" within Cendant, Sabatino was also the first cooperating defendant to agree to assist the Government in its investigation. Prior to formally executing his cooperation plea agreement, Sabatino expressed a desire to cooperate fully in the Government's investigation of himself and other persons. At his initial proffer session, he began what would become a long road toward explaining the nature and extent of the fraud as he knew it, as well as the accounting methods that were used to execute the fraud. Sabatino candidly acknowledged that his conduct was indeed wrong and did express genuine remorse for the actions he took while working at CUC/Cendant. At no time did he seek to minimize his conduct, or the scope of it. To the contrary, Sabatino acknowledged that he was knowingly, and directly involved in the inflation of earnings at CUC/Cendant.

As detailed below, Sabatino's cooperation in the prosecution of those responsible for the criminal activities within CUC/Cendant was extraordinary and critical in every sense of the word. Without Sabatino and the other "whistle blowers" disclosure of the fraud, it is possible that the fraudulent activity within Cendant could have continued on undetected for a substantial amount of time. Without Sabatino's cooperation the full extent of the offense may have never come to light. Indeed, former United States Attorney Robert Cleary, who enjoys more than fifteen years of prosecutorial experience, referred to Sabatino as an "exemplary cooperator" that stepped up immediately and took responsibility for his actions, providing information paramount to the Government's investigation.[1]

**B.    THE TRUTHFULNESS, COMPLETENESS, AND RELIABILITY OF ANY INFORMATION PROVIDED BY SABATINO**

From the first time that Sabatino proffered to the Government, he provided information concerning the culpability of himself, as well as other accountants and financial personnel at CUC, all of whom conspired from the late 1980's through 1998 to fraudulently inflate the books and records of CUC. Throughout the

---

[1] At the outset, it is worth noting that each of the prosecutors contacted by the current prosecution team, as well as a former FBI agent, offered to draft letters to Your Honor on Sabatino's behalf. For the sake of economy, it was decided that the Government's Motion would reflect the views of the prosecutors and agents Sabatino has assisted.

investigation and prosecution, Sabatino worked tirelessly in cooperating by meeting with the Government on at least thirty (30) separate occasions. It is the unanimous opinion of those involved that Sabatino worked hard to recall all pertinent facts related to the fraud in educating 2 different sets of prosecutors, as well as a number of federal agents.

Sabatino literally reviewed roomfuls of documents and spent hundreds of hours assisting and educating the Government in bringing those responsible for the fraud at CUC/Cendant to Justice. Sabatino was careful never to guess or to speculate about factual information that he could not recall. Thus, as a result, when Sabatino did recall factual information, the prosecutors and investigators had a high degree of confidence that Sabatino was providing accurate and truthful information. In each example that he provided the Government, his version of the facts were borne out by subsequently discovered documents or testimony to corroborate his claims. Indeed, the Government routinely relied upon Sabatino to point prosecutors and investigators to the documents necessary to establish evidence used in this matter.

Prior to Trial One, the prosecution was unaware whether defendants Shelton and Forbes would contest that a fraud in fact existed at CUC during the relevant

period (i.e. - the defense approach in the prosecution of Jeffrey Skilling and Kenneth Lay). Accordingly, the Government relied heavily upon Sabatino's knowledge of the books and records of CUC/Cendant to explain the operation of the fraud. Without the assistance of Sabatino and his coconspirators, the Government would have been forced to reconstruct and recreate years of transactions without the benefit of knowing what instructions Sabatino and others at CUC had received from their superiors and where they had implemented their goals of increasing CUC's/Cendant's earnings.

For example, Sabatino testified extensively in all three trials about the operation and use of unsupported topside adjustments, unsupported merger reserves adjustments, and the reclassification of earnings. His testimony gave life to the meaning behind the numbers and notations contained within countless spreadsheets and trial exhibits. For example, at Trial One it was Sabatino that introduced summary charts into evidence so that the jury could understand the magnitude of the quarterly topside adjustments that occurred on a quarterly basis from 1995 to 1997.

The unanimous opinion of the prosecutors and investigators who met with Sabatino is that Sabatino was a truthful and reliable cooperator throughout his more than seven year commitment.

### C.    THE NATURE AND EXTENT OF SABATINO'S ASSISTANCE

The nature and extent of Sabatino's cooperation was extraordinary. Indeed, the length of his cooperation has surpassed the statutory maximum for the offense which Sabatino plead guilty, 18 U.S.C. § 371, which is five years. As detailed above, it is the unanimous opinion of the prosecutors and agents involved, that his cooperation was exemplary.

Despite the length of his cooperation, it is clear that Sabatino merited a downward departure motion from the Government under the terms of his cooperation agreement very early in the investigation of the fraud at CUC/Cendant. To wit, Sabatino was the first defendant coconspirator to meet with the Government. Sabatino admitted his own culpability and truthfully implicated others involved, including Pember, Corigliano, and Shelton. Indeed, it is fair to conclude that Sabatino's decision to plead guilty greatly affected Corigliano's decision to plead guilty and cooperate against Shelton and Forbes. Having substantially assisted in the prosecution of Pember and Corigliano, Sabatino already earned a downward departure at that time. However, Sabatino's assistance did not end there.

Sabatino's cooperation continued. He met with the Government on more than 30 separate occasions. Sabatino also had to start from "scratch" when the

original prosecutors left the office. At that time, Sabatino began to explain the fraud to the prosecutors who tried Trial One. When describing the frauds, Sabatino did not merely answer the Government's inquires, but often affirmatively volunteered information and directed the prosecutors attention to key documents to ensure that the Government obtained a clear and accurate view of what occurred at CUC during his tenure.

In all, Sabatino testified for six days on the witness stand as a Government witness in Trial One. Sabatino's truthful testimony regarding meetings with Shelton during late 1997 and 1998 was critical to the conviction of Shelton. Sabatino was able to testify that Shelton received and reviewed certain inculpatory evidence (i.e. - documents like Government Exhibit 530) and provide the substance of conversations directly implicating Shelton in the fraud. Indeed, in finding that Shelton committed perjury, Judge Thompson credited Sabatino's and Pember's testimony concerning a key document that Shelton received, reviewed, and promptly ripped into pieces, stating words to the effect, "guess I never saw this before." Shelton denied that testimony at trial.

As Your Honor knows, although Shelton was convicted at Trial One, there were two additional trials in the prosecution of Forbes. Trial Two and Trial Three were substantially different from Trial One for an obvious reason: Forbes was the

sole defendant. Sabatino was not called as a Government witness in either trial, in large part, because he did not have substantial personal or professional interaction with Forbes. However, it is fair to conclude that Forbes's conviction also would not have been possible without the cooperation of Sabatino. First, Sabatino's cooperation in the investigation led directly to the guilty plea, and ultimate cooperation of Pember and Corigliano against Forbes. In addition, Sabatino was called as a witness for the defense in both Trial Two and Trial Three. In both trials, his truthful testimony about his involvement in the fraud and his implication of Stu Bell, Shelton, Corigliano, and other coconspirators provided powerful corroboration of Corigliano's testimony.

D.    **DANGER OR RISK OF INJURY TO SABATINO OR HIS FAMILY RESULTING FROM HIS ASSISTANCE**

The Government is unaware of any specific danger or risk of injury to Sabatino or his family members as a result of his cooperation.

E.    **THE TIMELINESS OF SABATINO'S ASSISTANCE**

There can be no doubt in this matter that Sabatino's assistance to the Government was timely. As a true "whistle blower," the Government would ask that significant weight be given to Sabatino's immediate, substantial, affirmative, and extremely useful cooperation. Indeed, the Government has acknowledged in

Sabatino's plea agreement, "[i]t is likely that the offense would not otherwise have been discovered for a substantial period of time" without Sabatino's voluntary disclosure. In the interest of justice, it would behoove the Government to ask for a substantial downward departure on this basis alone.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant the Government's motion for a downward departure pursuant to U.S.S.G. § 5K1.1.

>Respectfully submitted,
>
>CHRISTOPHER J. CHRISTIE
>Special Attorney
>United States Department of Justice
>
> /s/ Craig Carpenito
>By:   CRAIG CARPENITO (PHV0244)
>MICHAEL MARTINEZ (PHV0243)
>Special Attorneys
>United States Department of Justice